11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Tommy Lee Alcantar

Appellant

Vs.                   No. 11-02-00096-CR  -- 
Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted Tommy Lee Alcantar of the offense of murder and made an affirmative
deadly weapon finding.  Appellant
pleaded true to the enhancement allegation, and the jury assessed his
punishment at confinement for life and a fine of $10,000.  We affirm. 


Appellant
presents three issues for review.  In
the first and second issues, he challenges the legal and factual sufficiency of
the evidence in support of his murder conviction.  In order to determine if the evidence is legally sufficient, we
must review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State, 17
S.W.3d 664 (Tex.Cr.App.2000).  In order
to determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak as to render the conviction clearly wrong and manifestly unjust or
whether the evidence supporting guilt, although adequate when taken alone, is
so greatly outweighed by the overwhelming weight of contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).  








The record
shows that the victim suffered six gunshot wounds and was shot from close
range.  The victim later died as a
result of his wounds.  The question in
this case involves the identity of the shooter.  There was one eyewitness, Uridell Johnson, who testified at
trial.  

Johnson
testified that he had given the victim marihuana in exchange for crack cocaine
on the evening of the shooting.  He left
the apartment, walked to a nearby field, and smoked his crack cocaine.  After a while, appellant and another man
came walking through the field.  Both
had weapons and were wearing black clothes and black ski masks.  When the men were in the field, appellant=s ski mask was rolled up so that Johnson
could see his face.  Johnson watched the
men and followed them from a distance. 
Johnson saw appellant go to the apartment where the victim was, knock on
the door, ask for ADolittle,@ and begin shooting as soon as the door
opened.  ADolittle@ then came through the window and ran
away.  The man with appellant stood in the
breezeway and yelled, A[H]e=s getting away@ when ADolittle@ escaped; but the man did not fire his weapon.  

Willie
Clark, also known as ADolittle,@ testified that he and the victim were the
only people in the apartment when the shooting occurred.  Clark was in a bedroom resting when he heard
a knock on the door.  Clark heard the
victim answer the door, and he heard appellant ask for ADolittle.@  The victim told appellant that
Clark was not there but would be back later. 
Clark testified that he later heard more knocking on the door and
somebody mumble something.  Immediately
after the victim answered the door, Clark heard gunfire and dove through the
bedroom window to escape.  Clark did not
see the shooter, and he could not identify the muffled voice at the door.  Clark testified, however, that he used to
sell PCP to appellant on a daily basis and that he and appellant had had an
altercation earlier in the month of the shooting.  

The first
police officer to respond to the shooting testified that, before the victim
died, he gave a description of the shooter. 
The victim told the officer that the shooter was wearing black clothes
and had something covering his face. 
The victim also stated that he was shot with a AMack 10,@ which the officer described as a small, Ahand held machine pistol-type gun.@  Although the murder weapon was
not recovered in this case, nine .9 mm shell casings that were fired from the
same semiautomatic or automatic weapon were found by the front door and in the
living room of the apartment.  








Appellant=s Ajailhouse@
confession was admitted over objection. 
Mark Anthony Thornton, a witness who was in a holdover cell with
appellant on the last day of the guilt/innocence phase of appellant=s trial, testified that he recognized
appellant from their neighborhood and struck up a conversation about why they
were in jail.  Appellant said that he Akilled the nigger, but they couldn=t make it stick.@ 
Later, after they both returned to holdover, appellant said, A[W]ell, I=m gone to the house.@  The two joked about Thornton
needing the same attorney as appellant. 
Thornton testified that he asked his attorney one question about his
conversation with appellant and that, because of all the interrogation he was
subjected to, he regretted ever mentioning his conversation with
appellant.  

We hold
that the evidence is both legally and factually sufficient to show that
appellant committed the offense of murder as found by the jury.  Eyewitness testimony showed that appellant
committed the crime.  Furthermore, the
victim=s description of the shooter matched the
eyewitness=s description of appellant at the time of the
shooting.  Witnesses placed appellant at
the scene of the crime earlier in the day. 
Finally, a witness that was in a holdover cell with appellant testified
that appellant confessed to the murder. 
Appellant=s first and second issues are overruled.  








In his
final issue, appellant contends that the trial court abused its discretion in
overruling appellant=s
motion for new trial, which was based upon his assertion that trial counsel was
ineffective for failing to request a continuance prior to Thornton=s testimony. 
In order to determine whether trial counsel rendered ineffective assistance
at trial, we must first determine whether appellant has shown that counsel=s representation fell below an objective
standard of reasonableness and, if so, then determine whether there is a
reasonable probability that the result would have been different but for
counsel=s errors. 
Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988
S.W.2d 770 (Tex.Cr.App.1999); Hernandez v. State, 726 S.W.2d 53, 55
(Tex.Cr.App.1986).  In order to assess
counsel=s performance, we must make every effort to
eliminate the distorting effects of hindsight, to reconstruct the
circumstances, and to evaluate the conduct from counsel=s perspective at the time.  We must indulge a strong presumption that
counsel=s conduct fell within the wide range of
reasonable professional assistance; and appellant must overcome the presumption
that, under the circumstances, the challenged action might be considered sound
trial strategy.  Stafford v. State, 813
S.W.2d 503, 508‑09 (Tex.Cr.App.1991). 


The record
shows that Thornton came forward with information regarding statements that
appellant had made to him while they were in a holdover cell together on the
last day of the guilt/innocence phase of appellant=s trial. 
Trial counsel was informed of the new witness and of the statements
allegedly made by appellant.  Trial
counsel objected that he was surprised by the witness who was not on the
witness list.  Trial counsel requested a
hearing, which the trial court held outside the presence of the jury.  During the hearing, trial counsel was given Afull discovery@ regarding Thornton and his criminal history.  Trial counsel stated during the hearing that he was Atrying not to ask for a continuance here.@  

After
trial, appellate counsel filed a motion for new trial based on trial counsel=s ineffectiveness.  Trial counsel testified at the hearing on the motion for new
trial.  Trial counsel testified that he
had been offered a continuance by the trial court but that he decided to go
ahead with the trial.  In retrospect,
trial counsel thinks he should have requested a continuance.  Trial counsel testified, however, that it
was his trial strategy to not ask for a continuance.  We hold that appellant has failed to show that trial counsel
rendered ineffective assistance.  Viewed
from counsel=s perspective at the time of trial, we cannot
determine that his assistance fell below an objective standard of
reasonableness.  Furthermore, appellant
has not shown that there is a reasonable probability that the result of the
trial would have been different if counsel had obtained a continuance.  Appellant=s third issue is overruled.  

The
judgment of the trial court is affirmed. 


 

W. G. ARNOT, III

CHIEF
JUSTICE

March 20, 2003

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel consists of:  Arnot, C.J., and 

Wright, J., and McCall, J.